UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TAMENANG CHOH and GRACE KIRK, individually and on behalf of all others similarly situated,

    *Plaintiffs*,

  v.

BROWN UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, HARVARD UNIVERSITY, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, PRINCETON UNIVERSITY, and THE IVY LEAGUE COUNCIL OF PRESIDENTS,

    *Defendants*.

Civil Action No. 3:23-cv-003050-AWT

August 1, 2024

## PLAINTIFFS' MOTION TO MODIFY STAY OF DISCOVERY TO PERMIT FURTHER LIMITED DISCOVERY

In this proposed antitrust class action, Plaintiffs allege that Defendants' horizontal agreement not to compensate student-athletes, known as the "Ivy Agreement," violates Section 1 of the Sherman Act. ECF No. 1. Defendants do not dispute that they created and have long been parties to the Ivy Agreement, but on May 15, 2023, they nevertheless moved to dismiss the Complaint, ECF Nos. 153 & 153-1.

On May 10, 2023, five days before Defendants filed their motion, the parties submitted a Rule 26(f) Status Report, which included a case schedule that stayed discovery (subject to a narrow exception that required Defendants to produce a very limited set of documents) until the Court decided the motion. *See* Rule 26(f) Report of Parties' Planning Meeting, May 10, 2023, ECF No. 147 (the "26(f) report"). On June 21, 2023, Plaintiffs submitted a supplement to the case schedule that proposed (a) an extension of certain deadlines relating to a stipulated ESI protocol and (b)

orders regarding confidentiality, discovery consistent with the Family Educational Rights and Privacy Act ("FERPA") and Higher Education Act ("HEA"), and expert discovery (collectively "discovery protocols"). ECF No. 158. On June 26, 2023, the Court approved the supplement to the case schedule. ECF No. 159. On August 4, 2023, following a status conference, the Court approved the full schedule itself, including the stay of discovery. ECF No. 174.

Plaintiffs now move to modify the current stay of discovery to permit limited discovery responsive to Plaintiffs' Second Requests for Production ("Plaintiffs' Second Set of RFPs"), attached hereto as Exhibit 1. On July 17, 2024, the parties conducted a meet and confer regarding Plaintiffs' narrow discovery requests. During that meet and confer, Defendants suggested that they will seek relief if Plaintiffs serve their Second Set of RFPs. On July 26, 2024, Defendants confirmed that the parties are at impasse and oppose Plaintiffs serving any additional RFPs, even the limited ones listed in Exhibit 1.

The law in this district, as explained below, places the burden on Defendants to demonstrate that discovery should be stayed while their motion to dismiss is pending. The relevant factors include (1) the strength of Defendants' motion to dismiss; (2) the breadth of discovery sought and the burden it would impose on Defendants; (3) and the extent to which Plaintiffs would be prejudiced if discovery were denied. Plaintiffs show below that Defendants cannot meet their burden under these factors. Accordingly, the Court should grant Plaintiffs' motion.

**FACTUAL BACKGROUND**

Plaintiffs commenced this action on March 7, 2023, alleging that Defendants violated Section 1 of the Sherman Act by agreeing, under the Ivy Agreement, to prohibit financial aid awards based on a student's athletic performance and to provide no compensation to any student for the athletic services they render for the Defendants. ECF No. 1. There is no dispute between

the parties regarding the existence of this agreement. On May 15, 2023, however, Defendants moved to dismiss the complaint, arguing that (i) Plaintiffs do not adequately allege that Defendants have market power in a cognizable antitrust market; (ii) Defendants' horizontal price-fixing agreement is justified as a matter of law because it permits Defendants to maintain a unique "campus culture"; and (iii) Plaintiff Choh's claims fall outside the statute of limitations. Plaintiffs demonstrated in response that (i) Defendants themselves tout the uniqueness of the Ivy League brand of athletic competition in which they have a monopoly (and thus underscore that Plaintiffs' market allegations are more than sufficient); (ii) Defendants' cannot justify (let alone as a matter of law) price-fixing on the grounds that they seek to create a "campus culture" where athletes are exploited (just as other businesses cannot justify price-fixing in labor markets on the grounds that they seek to incorporate unpaid labor as a feature of their product); (iii) Defendants' statute of limitations argument is misplaced; and (iv) Defendants' arguments raise factual issues that cannot be resolved at the pleadings stage. ECF No. 160.

Since briefing Defendants' motion to dismiss, the parties have agreed on discovery protocols, which the Court has approved. ECF Nos. 175-78. Plaintiffs have also filed one motion for leave to file supplemental authority (on July 31, 2023), ECF No. 170[1]; a notice of additional

---

[1] On July 31, 2023, several days after Defendants filed their Reply to Plaintiffs' Opposition to the Motion to Dismiss, Plaintiffs brought to the Court's attention *Smart v. NCAA*, 2023 WL 4827366 (E.D. Cal. July 27, 2023), which denied a motion to dismiss claims that the NCAA's rule setting volunteer coaches pay at zero violated Section 1 of the Sherman Act. Plaintiffs highlighted four ways in which the court's decision was relevant to deciding Defendants' motion to dismiss here: (1) coaches plausibly alleged antitrust injury in alleging that they would have been paid something absent the NCAA rule; (2) the court adopted a "quick look" rule of reason standard, akin to the *per se* standard Plaintiffs in this case have urged; (3) proof of market power is not necessary under the quick look standard; and (4) the alleged market of "NCAA coaches" was sufficient, without the need to allege sport-specific markets, as Defendants have urged here. ECF No. 170. Defendants have contested these points. ECF No. 172.

relevant authority (on February 14, 2024), ECF No. 187[2]; and a second notice of additional relevant authority (on May 20, 2024), ECF No. 188.[3]

Under the current case schedule, with one exception, discovery has been stayed. ECF No. 174. That exception applies to Defendants' production of documents "created since June 1, 2021, concerning that portion of the Ivy League Manual that prohibits athletic scholarships." ECF No. 147 at 9. Defendants have since produced documents responsive to this request (though Plaintiffs reserve their right to challenge the sufficiency of that production). Plaintiffs now seek additional discovery by moving the Court to modify the current discovery stay to permit Plaintiffs to serve their Second Set of RFPs, attached as Exhibit 1. These RFPs seek relevant documents within the scope of the six topics the parties set out in their 26(f) Report:

(1) facts surrounding Defendants' decision not to award athletic scholarships;

(2) potential competitive effects of Defendants' decision not to award athletic scholarships;

(3) whether Defendants collectively have market power in a relevant market or markets;

(4) Any asserted procompetitive justifications for Defendants' challenged conduct;

(5) the efforts by Defendants and other schools to recruit the named Plaintiffs; and

(6) damages, if any, that Plaintiffs and proposed Class members have suffered.

---

[2] In this notice, Plaintiffs brought to the Court's attention a decision made on February 5, 2024, by the National Labor Relations Board's Regional Director for Region 1, finding that Dartmouth's men's basketball players are employees and granting them the ability to organize under the National Labor Relations Act. Plaintiffs suggested that this supported Plaintiffs' argument for the application of the "per se" standard and the sufficiency of Plaintiffs' relevant market allegations.

[3] In this notice, Plaintiffs brought to the Court's attention an amicus brief the Ivy League athletic conference submitted to the National Labor Relations Board in which it describes "the unique characteristics of the Ivy League," which is consistent with the Plaintiffs' definition of the relevant market, to the extent such a market must be defined.

In order to minimize any burden on Defendants, Plaintiffs' Second Set of RFPs limit the scope of requested documents to include policy statements; emails, handwritten notes, chats, or any structured data that are otherwise responsive are expressly excluded.

## ARGUMENT

I.     **Defendants Have the Burden of Establishing Discovery Should Not Move Forward**

The "well-established law" in the Second Circuit is that a "'motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act.'" *Scinto v. Ocean Link Co.*, 2018 WL 2186454, at *4 (D. Conn. May 11, 2018) (quoting *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). As a result, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Id.*

Instead, the burden is on the party urging a stay—in this case, Defendants—to demonstrate that discovery should not move forward. *See Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 66 (D. Conn. 2010); *Hong Leong*, 297 F.R.D. at 72 (explaining that "[a]n overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary discovery delay in many cases"); *Boost Oxygen, LLC v. Rocket Oxygen*, 2017 WL 10768482, at *1 (D. Conn. Mar. 21, 2017).

District courts must consider three factors to determine whether a movant has made the required showing of good cause: "(1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a stay would have on the non-moving party." *Johnson v. Gonzalez,* 2023 WL 2770684, at *2 (D. Conn. 2023) (citing *Lithgow v Edelmann,* 247 F.R.D. 61, 62 (D. Conn. 2007)). Defendants cannot meet their burden for any of these three factors.

5

II.     **Plaintiffs' Claims Are Meritorious Under the Applicable Standard**

Plaintiffs' allegations of liability are straightforward and any analysis of the damages at issue is fact-specific and no basis for a motion to dismiss. Nothing about Plaintiffs' theory of liability and recover is "unmeritorious," which is the standard this district has set forth for evaluating the strength of the motion to dismiss in connection with assessing whether to stay fact discovery. *Johnson*, 2023 WL 2770684, at *2 (citing *Hong Leong*, 297 F.R.D. at 72); *see also Stanley Works Israel Ltd. v. 500 Grp., Inc.,* 2018 WL 1960112, at *3 (D. Conn. Apr. 26, 2018) (assessing whether "there has been a strong showing that the plaintiff's claims is unmeritorious").

It is undisputed that Defendants, through the Ivy Agreement, have agreed to prohibit athletic scholarships for educational service and compensation for athletic services. Such an agreement on its face restrains trade and thus implicates Section 1 of the Sherman Act. Plaintiffs need not predict the outcome of the pending motion to dismiss—no court in this Circuit has ever required the party proposing fact discovery to do so. Instead, the law requires only that Plaintiffs' claims not be "so frivolous or glaringly deficient as to warrant a stay of discovery," *Levinson v, Pscc Servs. Inc.*, 2009 WL 10690157, at *2 (D. Conn. Sept. 16, 2009) (cited with approval in *Johnson*, 2023 WL 2770684, at *3), and be "founded in law," *Stanley Works*, 2018 WL 1960112, at *3. The undisputed presence of Defendants' price-fixing agreement renders Plaintiffs' allegations sufficient under these standards.

III.    **Plaintiffs' Second Set of RFPs Are Limited and Not Burdensome**

Plaintiffs' Second Set of RFPs are limited in breadth, well below the number and scope typically requested in antitrust class actions—which generally, as here, present a variety of complex fact-based issues. Plaintiffs have expressly excluded emails, texts, chats, and handwritten notes from their requests, which fall within the scope of the six topics the parties set out in their

6

26(f) Report: (1) facts surrounding Defendants' decision not to award athletic scholarships; (2) potential competitive effects of Defendants' decision not to award athletic scholarships; (3) whether Defendants collectively have market power in a relevant market or markets; (4) any asserted procompetitive justifications for Defendants' challenged conduct; (5) the efforts by Defendants and other schools to recruit the named Plaintiffs; and (6) damages, if any, that Plaintiffs and proposed Class members have suffered. By excluding emails, chats, and texts, Plaintiffs have hugely reduced prospective burden that these RFPs (like any RFPs) present. That is because Plaintiffs thus are not seeking the categories of documents that ordinarily require extensive meet-and-confers over search terms, exhaustive pre-production searches, or time-consuming pre-production document reviews. The facility with which Defendants addressed the foregoing topics in their motion to dismiss underscores the familiarity they obviously have with the subject matter and the relative ease with which they can identify and produce the core documents concerning the Ivy League Agreement—which Defendants describe as central to the very Ivy League mission and experience.

## IV.   Plaintiffs Would Be Prejudiced If Discovery Were Denied

The federal courts are busy courts, and this District is no exception. The difference in time between discovery now and discovery after the Court's resolution of the motion to dismiss, if the motion is denied, could be significant. After having already held off on discovery in earnest for a significant period of time, Plaintiffs seek now to expedite the litigation to benefit the proposed class of Ivy League athletes who are and were deprived of athletic scholarships and compensation. Indeed, Defendants' meet-and-confer position here—namely, that the Court is "likely" to rule on the motion to dismiss in the near future—reduces to the position "that a stay would only briefly delay discovery," which "proves too much because, if accepted, it would preclude a finding of

prejudice in every case in which the moving party asks for a stay pending the resolution of its motion." *Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 2946248, at *3 (S.D.N.Y. June 11, 2024) (cleaned up).

There can be no reasonable dispute that witnesses' memories fade with time, and the earlier that Plaintiffs can obtain the requested limited discovery, the more rapidly they can prepare for and take depositions. Initiating discovery now will also allow Plaintiffs' counsel to plan for broader document discovery, and thus reduce the likelihood of needing extensions, which in Plaintiffs' counsels' experience, are also common in antitrust class actions. Accordingly, Plaintiffs would suffer some prejudice if they could not launch the discovery process in the limited way proposed here. In addition, Plaintiffs are entitled to their discrete discovery based on the other two factors alone. *Idle Media*, 2024 WL 2946248, at *3 ("Good cause not otherwise having been shown, lack of prejudice does not justify a stay.") (cleaned up); accord *White v. UMG Recordings, Inc.*, 2021 WL 12284420, at *1 (S.D.N.Y. July 12, 2021); *Guffre v. Maxwell,* 2016 WL 254932, at *2 (S.D.N.Y. 2016).

**V.   Conclusion**

Plaintiffs respectfully request, for the foregoing reasons, that the Court grant their Motion to Modify the Stay of Discovery and Permit Further Limited Discovery.

Dated: August 1, 2024

By: */s/ John L. Cesaroni*

| | |
|---|---|
| Stephen M. Kindseth (ct14640) | Velvel (Devin) Freedman |
| James M. Moriarty (ct21876) | Edward Normand |
| John L. Cesaroni (ct29309) | Joseph Delich |
| ZEISLER & ZEISLER, P.C. | Stephen Lagos |
| 10 Middle Street, 15th Floor | FREEDMAN NORMAND |
| Bridgeport, CT 06605 | FRIEDLAND LLP |
| Tel. 203-368-4234 | 90 Park Avenue |
| Fax. 203-368-5485 | Suite 1910 |
| skindseth@zeislaw.com | New York, N.Y. 10016 |
| jmoriarty@zeislaw.com | Phone: 646-970-7513 |
| jcesaroni@zeislaw.com | vfreedman@fnf.law |
| | tnormand@fnf.law |
| Eric L. Cramer | jdrelich@fnf.law |
| Patrick F. Madden | slagos@fnf.law |

Alan K. Cotler
Najah Jacobs
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000
ecramer@bm.net
pmadden@bm.net
alancotler@gmail.com
njacobs@bm.net

Robert E. Litan
Dan Walker
Hope Brinn
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Phone: (202) 559-9745
rlitan@bm.net
dwalker@bm.net
hbrinn@bm.net

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2024, I caused to be electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                            /s/ *John L. Cesaroni*
                                            John L. Cesaroni (ct29309)