24-2826
*Choh v. Brown University*

**MANDATE**

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED* SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of May, two thousand twenty-six.

PRESENT:
> DENNIS JACOBS,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

TAMENANG CHOH, individually and on behalf of all others similarly situated, GRACE KIRK, individually and on behalf of all others similarly situated,

> *Plaintiffs - Appellants*,

> v.                                             No. 24-2826

_____

* This amended order corrects the counsel list to accurately identify each party's counsel at the time of argument.

BROWN UNIVERSITY, TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,
CORNELL UNIVERSITY, TRUSTEES OF
DARTMOUTH COLLEGE, HARVARD UNIVERSITY,
TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA, PRINCETON UNIVERSITY, YALE
UNIVERSITY, COUNCIL OF IVY GROUP
PRESIDENTS,

        *Defendants - Appellees.*†

_____

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | JOSHUA P. DAVIS, Berger Montague PC, San Francisco, CA (F. Paul Bland, Robert E. Litan, Berger Montague PC, Washington, D.C.; Eric L. Cramer, Alan Cotler, Berger Montague PC, Philadelphia, PA; Edward Normand, Richard Cipolla, Freedman Normand Friedland LLP, New York, NY, *on the brief*). |
| FOR DEFENDANT-APPELLEE THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA: | SETH P. WAXMAN, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C. (David Gringer, Alan Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *on the brief*). |
| FOR DEFENDANT-APPELLEE BROWN UNIVERSITY: | Noah J. Kaufman, Morgan, Lewis & Bockius LLP, Boston, MA; Jon R. Roellke, Morgan, Lewis & Bockius LLP, Washington, D.C. |

---

† The Clerk's office is respectfully directed to amend the caption as reflected above.

2

FOR DEFENDANT-APPELLEE
TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY
OF NEW YORK:

Karen Hoffman Lent, Skadden,
Arps, Slate, Meagher & Flom LLP,
New York, NY; Amy Van Gelder,
Skadden, Arps, Slate, Meagher &
Flom LLP, Chicago, IL.

FOR DEFENDANT-APPELLEE
CORNELL UNIVERSITY:

Norman Armstrong, Jr., Kirkland &
Ellis LLP, Washington, D.C.; Emily
T. Chen, Kirkland & Ellis LLP, New
York, NY (representation
terminated prior to argument).

FOR DEFENDANT-APPELLEE
TRUSTEES OF DARTMOUTH
COLLEGE:

Ishan K. Bhabha, Douglas E.
Litvack, Jenner & Block LLP,
Washington, D.C.

FOR DEFENDANT-APPELLEE
HARVARD UNIVERSITY:

Diane L. McGimsey, Sullivan &
Cromwell LLP, Los Angeles, CA.

FOR DEFENDANT-APPELLEE
PRINCETON UNIVERSITY:

Juan A. Arteaga, Rosa Morales,
Sidley Austin LLP, New York, NY;
Jordan Ludwig, Crowell & Moring
LLP, Los Angeles, CA
(representation terminated prior to
argument).

FOR DEFENDANT-APPELLEE
YALE UNIVERSITY:

Charles A. Loughlin, Benjamin F.
Holt, Christopher M. Fitzpatrick,
Hogan Lovells US LLP,
Washington, D.C.

FOR DEFENDANT-APPELLEE
COUNCIL OF IVY GROUP
PRESIDENTS:

Derek Ludwin, Meaghan Ryan,
Covington & Burling LLP,
Washington, D.C.

3

Appeal from a judgment of the United States District Court for the District of Connecticut (Thompson, *Judge*).[1]

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The two named plaintiffs-appellants in this putative class action played men's and women's basketball at Brown University, respectively.  They bring this suit against defendants-appellees, a group of eight member universities[2] (collectively, the "University Defendants") and a Council of their respective presidents (the "Council") identified together with the University Defendants as

---

[1] The district court dismissed Plaintiffs' claims on October 9, 2024.  The court did not enter judgment on a separate document as required by Federal Rule of Civil Procedure 58(a). Nevertheless, the judgment became final 150 days after the order was entered on the docket, and we deem plaintiffs' notice of appeal to have been timely filed as of that date.  *See* Fed. R. App. P. 4(a)(2), 4(a)(7)(A).  Moreover, we note that "failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order."  Fed. R. App. P. 4(a)(7)(B).  Where "an order appealed from clearly represents a final decision and the appellees do not object to the taking of an appeal, the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper."  *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 113 n.1 (2d Cir. 2025) (per curiam). Defendants have not objected and have waived the separate document requirement.  We therefore exercise jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Specifically, Brown University, Trustees of Columbia University in the City of New York, Cornell University, Trustees of Dartmouth College, Harvard University, Trustees of the University of Pennsylvania, Princeton University, and Yale University.

the "Ivy League".  The putative class includes "all Ivy League Athletes recruited to play a sport by one or more University Defendants, and who, within the Class Period, attended one of the University Defendants' undergraduate programs while playing a sport for that school."  App'x 88, ¶ 246.

Plaintiffs allege that the University Defendants collectively agreed not to provide athletic scholarships to their Division I athletes and not to pay their athletes "any compensation (or reimbursement of education-related expenses) for the athletic services they provide to the University Defendants."  App'x 35, ¶ 1. Plaintiffs assert that this agreement (the "Ivy League Agreement") amounts to price-fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  App'x 89–90.

Defendants moved to dismiss the complaint, and the district court granted the motion. *See Choh v. Brown University*, 753 F. Supp. 3d 117, 137 (D. Conn. 2024). As relevant to this appeal, the district court applied the rule of reason and determined that the complaint failed to satisfy the requirements for defining a plausible relevant market for either the sale of educational services or the purchasing of athletic services. *Id.* at 132–33.  As to the primary market alleged, defined solely with reference to the University Defendants themselves, it held that

5

the complaint "alleges facts which show that schools other than the University Defendants compete" to sell educational services to and purchase athletic services from elite student-athletes.[3] *Id.* at 132.  As to the markets alleged in the alternative, the court explained that the sale-and-purchase markets alleged to include "both the Defendant Universities and a few other schools, including Stanford, Notre Dame, Duke, and Rice," App'x 81, ¶ 210; App'x 82, ¶ 218, did not sufficiently plead the "boundaries of the relevant product market."  *Choh*, 753 F. Supp. 3d at 133.  Accordingly, it concluded that "the facts alleged by the plaintiffs are legally insufficient to show an adverse effect on competition as a whole in a relevant market," as would be necessary to sustain their Sherman Act § 1 claims.  *Id.*  The district court further held that plaintiff Choh's claim is barred by the statute of limitations.  *Id.* at 137.

On appeal, plaintiffs challenge the district court's application of the rule of reason and its assessment of the timeliness of Choh's claims.  We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

---

[3] In quotations from caselaw, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

We review a district court's dismissal pursuant to Rule 12(b)(6) without deference to the district court's reasoning, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Regeneron Pharmaceuticals, Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 n.7 (2d Cir. 2024).

To state a claim under § 1 of the Sherman Act under the rule of reason, "a plaintiff must allege a plausible relevant market in which competition will be impaired."  *City of New York v. Group Health Incorporated*, 649 F.3d 151, 155 (2d Cir. 2011); *Ohio v. American Express Co.*, 585 U.S. 529, 543 (2018) ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market.").  We reject plaintiffs' contention that their allegations of direct anticompetitive harm excuse them from pleading a relevant market.

Plaintiffs rely on a footnote from *American Express* to argue that because they have pled a horizontal restraint "involv[ing] agreements between competitors not to compete in some way," they need not "precisely define the relevant market." 585 U.S. at 543 n.7.  That footnote cannot support the weight plaintiffs assign it.  In the cases cited therein, the relevant market was self-evident.  *See Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447, 451 (1986) (evaluating

7

claims of concerted action involving "nearly 100% of the dental specialists in the Anderson area, and approximately 67% of the dentists in and around Lafayette"); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647–48 (1980) (involving claims of anti-competitive conduct by wholesalers brought by beer retailers around Fresno, California).  We do not read this footnote to hold broadly that plaintiffs alleging horizontal restraints need not contextualize those restraints in an identifiable market.  *See, e.g.*, *1-800 Contacts, Inc. v. Federal Trade Commission*, 1 F.4th 102, 118 n.11 (2d Cir. 2021) (explaining that the footnote from *American Express* doesn't alter the requirement that plaintiffs show evidence of anticompetitive harm "in the market as a whole").

Plaintiffs don't sufficiently plead a relevant market.  They assert that the "misconduct at issue occurs in two related markets: (l) the market for educational services for athletically and academically high-achieving ("AAHA") students who seek to graduate from college and play Division 1 sports in the National Collegiate Athletic Association ("NCAA"), and (2) the market for the athletic services of the AAHA students who seek to play for the University Defendants."[4]  App'x 37, ¶ 7.

---

[4] Because neither party here argues otherwise, we assume without deciding that the universe of student athletes falling within this definition is sufficiently ascertainable to support a market defined with reference to such students' capabilities and interests.

Plaintiffs allege that each of these two markets can, in turn, be defined with reference to "the University Defendants," App'x 79, ¶ 201; App'x 81, ¶ 212 (the Ivy-only market), or, in the alternative, "both the Defendant Universities and a few other schools, including Stanford, Notre Dame, Duke, and Rice," App'x 81, ¶ 210; App'x 82, ¶ 218 (the Ivy-plus market).

Though we have a "relatively permissive pleading standard," plaintiffs fail to satisfy it here. *Regeneron*, 96 F.4th at 339. The alleged Ivy-only markets do not "encompass all interchangeable substitute products." *Id*. Conclusory assertions that "AAHA students would not view colleges or universities outside the Ivy League with Division I athletics programs to be reasonable substitutes," App'x 79, ¶ 203, contradict well-pleaded facts in the complaint explaining that "other academically selective institutions offer athletic scholarships along with need-based aid for all other students, without sacrificing their academic standing," App'x 84–85, ¶ 231 (citing Stanford University as an exemplar). Though plaintiffs contend that the district court erred by adopting a functional rather than economic test for substitutability, their own pleading indicates that other universities have "reasonable interchangeability" such that they are *economic* substitutes for the University Defendants. *Regeneron*, 96 F.4th at 340. Plaintiffs' arguments to the

9

contrary conflate the Ivy League *brand* with the applicable market for AAHA students.

Moreover, the alleged Ivy-plus markets for sale of educational services to and purchase of athletic services from AAHA students are insufficiently defined, as the complaint does not "include a plausible explanation as to why [these markets] should be limited to exclude possible substitutes." *Id.* at 338. Plaintiffs put forth no accounting of which universities or colleges comprise the Ivy-plus market, nor do they make clear the boundaries of the market with respect to its "peculiar characteristics and uses," "distinct customers," or any "characteristics peculiar to itself." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325–26 (1962).

Our conclusion is bolstered by the Supreme Court's reasoning in *National Collegiate Athletic Association (NCAA) v. Alston*, 594 U.S. 69 (2021). In that case, the Court upheld an injunction limiting the NCAA's restraints on "education-related compensation and benefits." *Id.* at 85, 107. In explaining the limitations of the injunction, the Court noted that "individual conferences may adopt" rules about academic awards that are "stricter" than those required by the NCAA. *Id.* at 105. That makes sense. Because the NCAA "enjoys near complete dominance of, and exercises monopsony power in, the relevant" markets, there were no viable

10

substitutes.  *Id.* at 81.  But no individual conference, such as the Ivy League, enjoys that level of "market dominance."  *Id.* at 82.

Plaintiffs' failure to plead a relevant market is fatal to both their direct and indirect allegations of anticompetitive harm under the Sherman Act, § 1.  *American Express Co.*, 585 U.S. at 541–42.  The district court thus properly dismissed the plaintiffs' sole claim.  Given this conclusion, we do not consider plaintiff Choh's contention that the district court erred in concluding his challenge was untimely.

\* \* \*

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit